UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FRANKLIN VOEGTLIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:11CV1980 HEA |
| ) | |
| CAROLYN W. COLVIN[1] ) | |
| Commissioner of Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's request for judicial review under 28 U.S.C. § 405(g) of the final decision of Defendant denying Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq* and Supplemental Security Income (SSI) under Title XVI, 42 U.S.C. §1381, *et seq*. For the reasons set forth below, the Court affirms the Commissioner's denial of Plaintiff's applications.

**FACTS AND BACKGROUND**

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

When Plaintiff appeared to testify at the hearing on January 4, 2011 he was 27 years old. He has completed his high school and had an Associate Degree in Computer Science from college. Plaintiff has had training/employment as a heavy equipment operator. He subsequently became incarcerated and upon release he searched for work but could not secure employment without a medical release. He could not focus and had back pain. At the time of the hearing the Plaintiff was living with his fiancée.

Plaintiff also testified at the hearing that he has difficulties sleeping and he also has anxiety issues. He also stated that he has crying spells that come on for no reason and sometimes last for up to twenty minutes. Plaintiff has back problems and pain which affects his ability to stand and walk for long periods of time. He suffers from major headaches that occur every other day, but has not been able to determine the cause. The ALJ found Plaintiff had the severe impairments of: mood disorder, NOS, attention deficit hyperactivity disorder ("ADHD") degenerative changes of the spine, and hepatitis-C (20 CFR 404.1520 (c) and 416.920 (c) ).

A vocational expert also testified. The VE testified, in relation to an onset date of December 15, 2004, and in response to a hypothetical, that Plaintiff could not perform any past relevant work. The VE also concluded from the hypothetical question that Plaintiff has capacity to remember, understand and carry out at least

simple instructions and non-detailed tasks, respond appropriately to supervisors and co-workers, adapt to routine/simple work changes, and maintain regular attendance and work presence without special supervision. He is also limited to work that does not involve direct contact with food products.

Plaintiff's application for social security and supplemental security income benefits under Titles II, 42 U.S.C. §§ 401, *et seq*., and XVI of the Act, 42 U.S.C. § 1381, *et seq*., was denied on April 12, 2010. On April 20, 2010, Plaintiff filed a timely Request for Hearing by Administrative Law Judge . After a hearing, the ALJ issued an unfavorable decision dated February 7, 2011. On April 1, 2011, Plaintiff filed a Request for Review of Hearing Decision with the Appeals Council. The Appeals Council denied Plaintiff's request for review on September 23, 2011. Thus, the decision of the ALJ became the final decision of the agency.

## Standard For Determining Disability

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir.2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

A five-step regulatory framework is used to determine whether an individual claimant qualifies for disability benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a); see also *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir.2011) (discussing the five-step process). At Step One, the ALJ determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I); *McCoy*, 648 F.3d at 611. At Step Two, the ALJ determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611.

At Step Three, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant has such an impairment, the Commissioner will find the claimant

disabled; if not, the ALJ proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir.2009) (citing 20 C.F.R. § 404.1545 (a)(1)); see also 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. Id. At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a

significant number of jobs within the national economy.  *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir.2012).

## ALJ's Decision

In the application of the five-step analysis, the ALJ in this case determined at Step One the ALJ found Plaintiff had not performed substantial gainful activity since the alleged onset date of disability of December 15, 2004.  At Step Two, the ALJ found Plaintiff's severe impairments were: mood disorder, NOS; attention deficit hyperactivity ("ADHD"); degenerative changes of the spine; and hepatitis C.  At Step Three the ALJ concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

Prior to Step Four the ALJ found Plaintiff had the residual functional capacity (RFC) to perform light work:  Plaintiff retains the capacity to remember, understand, and carry out at least simple instructions and non-detailed tasks; respond appropriately to supervisors and co-workers; adapt to routine/simple work changes; and maintain regular attendance and work presence without special supervision.  The Plaintiff is limited to work that does not involve direct contact with food products.

At Step Four, the ALJ found Plaintiff was unable to perform past relevant work.

At Step Five, considering the age, education, work experience, and residual functional capacity, the ALJ found, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. The Plaintiff does not have a disability as defined in the Social Security Act.

## Standard For Judicial Review

The Court's role in reviewing the Commissioner's decision is to determine whether the decision "'complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.'" *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir.2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir.2008)). "Substantial evidence is 'less than preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir.2012) (quoting *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir.2009)). In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. Id. However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" Id. (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir.2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent

7

positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir.2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir.2005)). The Court should disturb the administrative decision only if it falls outside the available "zone of choice" of conclusions that a reasonable fact finder could have reached. *Hacker v.Barnhart*, 459 F.3d 934, 936 (8th Cir.2006).

## Discussion

In his appeal of the Commissioner's decision, Plaintiff makes the following arguments: (1) The hypothetical to the vocational expert was flawed and did not capture the consequences of Plaintiff's impairment and the response of the vocational expert does not therefore rise to the level of substantial evidence; (2) The ALJ finding as to the Residual Functional Capacity is not supported by evidence as required in *Singh* and *Lauer*.

**The hypothetical to the vocational expert was flawed and did not capture the consequences of Plaintiff's impairment and the response of the vocational expert does not therefore rise to the level of substantial evidence.**

Plaintiff argues that the hypothetical question to the Vocational Expert is flawed as it relied upon an incorrect RFC[2]. The RFC included those credible

---

[2] A claimant's RFC is the most an individual can do despite the combined effects of all of his or her credible limitations. See 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and

8

impairments and restrictions applicable to Plaintiff. These credible aspects allowed the ALJ to conclude the range and type of work to be simple, light work. "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." *Pearsall*, 274 F.3d at 1217 (citing *Anderson*, 51 F.3d at 779). The ALJ was justified in relying on the vocational expert's testimony in finding Plaintiff not disabled (Tr. 23-24). *See Nelson v. Sullivan*, 946 F.2d 1314, 1317 (8th Cir. 1991). The hypothetical question need only set out with reasonable precision the impairments of the claimant which have been found as credible by the ALJ. *See McCoy*, 648 F.3d at 617; *Gragg v. Astrue*, 615 F.3d 932, 940 (8th Cir. 2010).

The ALJ properly included all credible limitations in Plaintiff's RFC (Tr. 16-17). The vocational expert testified that an individual with Plaintiff's limitations could perform work existing in significant number in the national economy (Tr. 23-24, 40). The ALJ, therefore, properly concluded Plaintiff was capable of other work.

**The ALJ finding as to the Residual Functional Capacity is not supported by evidence as required in *Singh* and *Lauer*.**

The Eighth Circuit has noted that the ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations

---

the medical opinion evidence. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir.2010); see also 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p.

of treating physicians and others, and an individual's own description of his limitations. *See McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) (citing *Flynn v. Astrue*, 513 F.3d 788, 792 (8th Cir. 2008). "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). The RFC only needs to include Plaintiff's credible limitations. *See Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record."). The ALJ articulated appropriate bases for the weight given the evidence of record and found that Plaintiff retained the RFC to perform a range of simple, light work.

Plaintiff may be confused on the significance of *Singh* and *Lauer* here. It is true that the formulation of the RFC is a medical question and must be based on *some* medical evidence. *Singh v. Apfel*, 222 F.3d 448(8th Cir. 2000) and *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000). An ALJ has the duty at, step four, to formulate the RFC based on all the relevant, credible evidence of record. *See McCoy*, 648 F.3d at 614.

The the ALJ's decision is supported by medical evidence. The regulations explain that medical evidence includes medical records and observations. See 20 C.F.R. §§ 404.1512(b)(1), 404.1513(b), 404.1528(b)-(c), 416.912(b)(1), 416.913(b), 416.928(b)-(c) (2012). Plainitff had normal gait, normal ranges of motion, no neurological deficits, full strength, and no edema (Tr. 190, 192, 196, 198, 200, 222, 240, 467, 533). He appeared in no acute distress (Tr. 190, 192, 196, 198, 200, 240, 411, 423, 434, 495, 503). See McCoy, 648 F.3d at 614 (citing *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005). Plaintiff was alert, oriented, calm, and cooperative, and exhibited normal mood, affect, behavior, speech, motor activity, thought processes, memory, and cognitive ability (Tr. 180, 190. 192, 196, 198, 200, 255-56, 258, 260-61, 263-64, 268-70, 275, 277, 282-83, 292, 296, 298-99, 301, 303-04, 306, 309-, 313, 313, 511). He exhibited no signs of a severe mental impairment (Tr. 256, 263, 283, 298-99, 304, 306, 309-11, 313). Plaintiff was assigned Global Assessment of Functioning ("GAF")[3] scores between 55 and 75 (Tr. 259, 262, 264, 269-70, 272-73, 288, 292-93, 295, 297, 300-01, 303, 308, 310, 512-14). *See Goff v. Barnhart*, 421 F.3d 785, 789, 791, 793 (8th Cir.

---

[3] A GAF is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. revision 2000) ("DSM-IV-TR"). A GAF of 51-60 is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning.

2005) (GAFs of 58 and 60 support ALJ's limitation for simple, routine, repetitive work).

Determining credibility is the primary responsibility of the ALJ. In making this determination, the ALJ considered the record as a whole, including Plaintiff's subjective complaints (Tr. 15-16, 18-22). The ALJ properly determined that Plaintiff's allegations regarding his limitations were not totally credible. The ALJ properly considered that Plaintiff's allegations were inconsistent with the record as a whole, including his improvement with treatment, his minimal and routine medical treatment, his noncompliance with treatment, the medical evidence, and the ALJ's observations. This is all consistent with the requirements of *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). In analyzing a claimant's subjective complaints of pain, an ALJ examines the following: 1) the claimant's daily activities; 2) the duration, frequency and intensity of pain; 3) dosage, effectiveness, and side effects of medication; 4) precipitating and aggravating factors; and 5) functional restrictions. *See* 20 C.F.R. §§ 404.1529, 416.929. The evidence of record supported the ALJ's determination that Plaintiff was not fully credible and this court should defer the credibility determination. *See Wildman*, 596 F.3d at 968.

The medical records disclosed that Plaintiff improved with proper medical treatment. Plaintiff alleged disability beginning in December 2004 due to back

pain, possible colon cancer, bipolar disorder, and ADHD (Tr. 106, 112, 160). While Plaintiff complained of back pain, the medical records show that his complaints improved with treatment (Tr. 19). Plaintiff started on gabapentin in January 2010 and he reported that his symptoms improved (Tr. 418, 423, 495, 533). He also received hydrocodone that improved his back pain (Tr. 495, 503, 533). Plaintiff's hepatitis C was stable and asymptomatic (Tr. 19, 379). These records were properly reviewed. *See Perkins v. Astrue*, 648 F.3d 892, 903 (8th Cir. 2011) (citing *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010)).

The Plaintiff's mental impairments also improved with treatment (Tr. 19-20). The ALJ properly considered Plaintiff's ADHD treatment (Tr. 19-20). The medical records show that Plaintiff's ADHD improved with treatment (Tr. 19, 410, 418, 420, 511-12). And despite being diagnosed with ADHD when he was 17-years-old, he performed substantial gainful activity and ran a business (Tr. 19, 120). *See Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) ("Thus, despite suffering from what she calls 'extreme fatigue,' Van Vickle continued working for over four years."). Plaintiff obtained his associate's degree after this diagnosis (Tr. 31, 166-67). The medical records also show that Plaintiff's depression improved with treatment (Tr. 19-20, 240, 259, 268, 271, 274, 276-77, 282, 304, 306, 410-11).

Plaintiff asserted that he became disabled beginning on December 2004 due to back pain, but he did not seek any medical treatment for back pain until October

2008 (Tr. 294). He did not seek treatment between November 2008 and January 2010 (Tr. 424). Plaintiff's treatment for his back pain did not support the extent of his allegations. Plaintiff testified that he suffered from frequent headaches (Tr. 37-38). The ALJ properly found that Plaintiff never sought treatment for headaches (Tr. 15). Plaintiff received routine and conservative treatment for his impairments (Tr. 19). See *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (citing *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir. 1998)). Plaintiff's complaints were inconsistent with his level of treatment.

In addition to Plaintiff's limited medical treatment, he did not comply with his prescribed treatment (Tr. 20-21). *See Guilliams*, 393 F.3d at 802 (citing *Gowell*, 242 F.3d at 797). Despite Plaintiff's improvement with treatment, he did not comply with his prescribed medications for depression (Tr. 20). Plaintiff routinely discontinued his medications (Tr. 233, 235, 263, 271). When medications were restarted, his depression would continue to be controlled (Tr. 276-77, 304). Plaintiff was discharged from a drug treatment program for noncompliance (Tr. 247). He was not interested in mental health therapy (Tr. 512). The ALJ also properly considered Plaintiff's cancelled medical appointments and his no shows (Tr. 21, 261, 278-79, 380-81, 283, 285, 288, 295-96, 312, 356, 413, 527). *See Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) ("The ALJ paid particular attention to the fact that Eichelberger cancelled several physical therapy

appointments . . . ."). Plaintiff's noncompliance supported the conclusion of a lack of credibility.

The ALJ is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations, but it is a factor that must be considered (Tr. 21). *See Polaski*, 739 F.2d at 1322. Here the ALJ observed that Plaintiff did not display any difficulty concentrating or focusing at the administrative hearing (Tr. 21).

The ALJ also properly considered Plaintiff's criminal history (Tr. 18). *See Simmons v. Massanari,* 264 F.3d 751, 756 (8th Cir. 2001). The administrative record shows that Plaintiff was in prison between October 2005 and November 2005, April 2006 and October 2006, January 2007 and February 2008, August 2008 and December 2008, and December 2008 and July 2009 (Tr. 32, 187, 256, 270, 291, 299, 313, 518). See 20 C.F.R. § 404.468 (2012). Plaintiff's criminal history does not support his credibility (Tr. 18).

Plaintiff argues that a worthy consideration of Dr. Asher would have been beneficial to him. The ALJ, however, found that Dr. Asher's opinion was conclusory and not supported by the record (Tr. 21). Dr. Asher's June 2010 medical opinion is a simple, check-mark box form and the doctor provided little to no explanation for his opinion (Tr. 488-90). *See Teague v. Astrue*, 638

15

F.3d 611, 615 (8th Cir. 2011) ("Given that the 'check-off form' did not cite any clinical test results or findings and Dr. Lowder's previous treatment notes did not report any significant limitations due to back pain, the ALJ found that the MSS was entitled to 'little evidentiary weight.'"); *Wildman*, 596 F.3d at 964 (the ALJ properly discounted a physician's opinion because it was conclusory, consisted of three checklist forms, cited no medical evidence, and provided little to no elaboration). The Doctor's conclusory opinion was, therefore, not entitled to significant weight and was in conflict with the record as a whole.

The ALJ also properly considered the medical opinion of the state agency medical consultant (Tr. 21-22). *See Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007) ("The ALJ did not err in considering the opinion of [the state agency medical consultant] along with the medical evidence as a whole."). In April 2010, Marsha Toll, Psy.D., reviewed the relevant medical records and found that Plaintiff could understand, remember, and carry out simple instructions; maintain adequate attention and sustain an ordinary routine without special supervision; interact appropriately with peers and supervisors; and adapt to most usual changes common to a competitive work setting (Tr. 451-65). The ALJ properly considered this opinion in assessing Plaintiff's RFC and accounted for the limitations (Tr. 21-22).

The ALJ's findings were clearly based upon the substantial evidence on the record as a whole regarding his impairments, the medical opinions in the record,

F.3d 611, 615 (8th Cir. 2011) ("Given that the 'check-off form' did not cite any clinical test results or findings and Dr. Lowder's previous treatment notes did not report any significant limitations due to back pain, the ALJ found that the MSS was entitled to 'little evidentiary weight.'"); *Wildman*, 596 F.3d at 964 (the ALJ properly discounted a physician's opinion because it was conclusory, consisted of three checklist forms, cited no medical evidence, and provided little to no elaboration). The Doctor's conclusory opinion was, therefore, not entitled to significant weight and was in conflict with the record as a whole.

The ALJ also properly considered the medical opinion of the state agency medical consultant (Tr. 21-22). *See Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007) ("The ALJ did not err in considering the opinion of [the state agency medical consultant] along with the medical evidence as a whole."). In April 2010, Marsha Toll, Psy.D., reviewed the relevant medical records and found that Plaintiff could understand, remember, and carry out simple instructions; maintain adequate attention and sustain an ordinary routine without special supervision; interact appropriately with peers and supervisors; and adapt to most usual changes common to a competitive work setting (Tr. 451-65). The ALJ properly considered this opinion in assessing Plaintiff's RFC and accounted for the limitations (Tr. 21-22).

The ALJ's findings were clearly based upon the substantial evidence on the record as a whole regarding his impairments, the medical opinions in the record,

and the ALJ's specific credibility findings. The ALJ applied the proper standard to the facts and the determination of Plaintiff's RFC and his ability to perform his past relevant work is supported by the record as a whole.

## Conclusion

After careful review, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. The decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is affirmed.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 19th day of February , 2014.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE